UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRELL HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 5222 |
| | ) | |
| THOMAS J. DART, GERALD MOORE, | ) | |
| BRENT S. O'HEARN, PATRICK FITZPATRICK, | ) | Judge Thomas M. Durkin |
| SCOTT KNEFEL, GENO MUSKAT, | ) | |
| JACEK BRYLEWSKI, NURSE OBULI, and | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jerrell Harris, who is represented by recruited volunteer counsel, brings this 42 U.S.C. § 1983 action against defendants Sheriff Thomas J. Dart, Sergeant Gerald Moore, Nurse Obuli, Officers Brent O'Hearn, Patrick Fitzpatrick, Scott Knefel, Geno Muskat and Jacek Brylewski, and the County of Cook (collectively, "Defendants"). Defendants moved to dismiss Harris's operative complaint under Federal Rule of Civil Procedure 12(b)(6). R. 36. For the reasons that follow, that motion is granted in part, but the Court takes under advisement certain aspects of that motion pending additional briefing ordered below.

**Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled

to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

The facts giving rise to this lawsuit are straightforward, the procedural history less so. The Court begins with the facts alleged in the operative complaint.

***Factual allegations.*** Harris was an inmate at Cook County Jail at all times relevant to this lawsuit. R. 35 ¶ 2. On February 29, 2016, Harris was in maximum security segregation because of overcrowding when Nurse Obuli announced medication time would be at 6:00 p.m. in the dayroom. *Id.* ¶¶ 16, 25-27. Because only two inmates are permitted in the dayroom at a time, Sergeant Moore directed Officers

2

Knefel, Fitzpatrick, O'Hearn, Muskat, and Brylewski to lock Harris in a janitor's closet, where he remained for fifteen minutes. *Id.* ¶¶ 27-28. Before doing so, Knefel told Harris "This is how we treat savages," and Fitzpatrick said "This is how we treat animals." *Id.* ¶¶ 15, 28. Harris repeatedly yelled "Let me out," and complained to Knefel that it was hot and he was having difficulty breathing. *Id.* ¶ 29. Eventually, Harris lost consciousness and fell backward, hitting his head, causing a half-inch-high raised bump. *Id.* ¶¶ 30, 33. Harris claims that his lower back was also injured from the fall, apparently because the shackles and padlock that held his arms behind his back were in the general vicinity of bullet fragments lodged in his back from an incident years before. *Id.* ¶¶ 31-32.

When Harris regained consciousness, Officers Knefel and Fitzpatrick roughly pulled him to his feet. The officers laughed at his request for medical care, *id.* ¶¶ 34-35, and Sergeant Moore stated "We really f\*\*\*ed up," *id.* ¶ 36. Nurse Obuli was summoned and took Harris's pulse but did not examine his head or lower back. She recommended that Harris walk to the infirmary (a distance of approximately 25 feet) for further medical treatment. *Id.* ¶¶ 28-30. Harris complained of dizziness and lower back pain. *Id.* ¶ 41. Sergeant Moore refused to obtain a wheelchair for Harris after Nurse Obuli said he did not need one. *Id.* ¶¶ 7, 19. Officer Knefel walked Harris to the infirmary, where Nurse Obuli gave him ten Tylenol or Advil pills for his headache and back pain, but refused to set up an appointment with the staff doctor. *Id.* ¶¶ 20, 40, 42.

According to Harris, the bump on his head remained for at least four days after the incident, he experienced headaches and lower back pain for a week, and continues to experience lower back pain on occasion. *Id.* ¶¶ 43-44. Harris also alleges he suffered embarrassment, outrage, fear and emotional trauma from the incident. *Id.* ¶ 48.

***First lawsuit.*** In May 2016, Harris filed a federal case captioned *Harris v. Moore, et al.*, 16 C 5233 (N.D. Ill.) regarding the same events that underlie this lawsuit ("First Lawsuit"). 16 C 5233, R. 1. Harris named "SG. Moore/Nurse Ms. Obuli," "C'O' O'Hearn," "C'O' Fitzpatrick," "C.O. Knifeel," "C.O. Muskat," and "C.O. Brylewski" as defendants. *Id.* The case was assigned to this Court, and counsel was recruited. Harris subsequently amended his complaint through counsel to name Sergeant Moore, Correctional Officer Knifeel, Correctional Officer Fitzpatrick, Nurse Obuli and "Unknown Correctional Officers" as defendants, and terminate O'Hearn, Brylewski and Muskat. 16 C 5233, R. 8. Ultimately, in November 2016, Harris voluntarily dismissed his lawsuit because he could not determine the full names of the individual defendants. 16 C 5233, R. 15; R. 46 at 2.

***This case.*** A year later in November 2017, Harris filed a complaint in state court through the same counsel, naming by last name Moore, Fitzpatrick, Knefel and Obuli as defendants. In May 2018, Harris amended the complaint to add Sheriff Dart and replace Moore, Fitzpatrick, Knefel and Obuli with "Unknown Cook County Correctional Officers" and "Unknown Cook County Correctional Nurse."

On July 31, 2018, Dart filed a notice of removal and the case was assigned to this Court. R. 1. On December 10, 2018, Harris filed a Second Amended Complaint

4

naming as defendants: Sheriff Dart; Sergeant Moore and Officers O'Hearn, Fitzpatrick, Knefel, Muskat and Brylewski (identifying each by badge number); "First Name Unknown (F/N/U) Nurse Obuli;" and Toni Preckwinkle as President of the Cook County Board of Commissioners. R. 16. The Second Amended Complaint eliminated the reference to unknown correctional officers. *Id.* Harris filed a Third Amended Complaint the next day, substituting Cook County for Preckwinkle. R. 18. Finally, on March 18, 2019, Harris filed his Fourth Amended Complaint—the operative complaint—correcting the spelling of Moore's first name and setting forth two claims: (1) that Defendants violated his Fourteenth Amendment rights by locking him in the janitorial closet (Count I); and (2) that Cook County is vicariously liable for the actions of the officers (Count II). R. 35.

Defendants subsequently moved to dismiss, arguing that: (1) the statute of limitations bars Harris's claims against Dart, O'Hearn, Muskat, Brylewski and Cook County; (2) Dart cannot be individually liable because Harris failed to plead his personal involvement; (3) Harris failed to allege a policy, custom, or practice to support any claim under *Monell v. Dept. of Soc. Services of City of New York*; (4) Harris failed to sufficiently plead a Section 1983 violation; (5) Cook County could not be held vicariously liable under Section 1983; and (6) punitive damages are not available against deputy sheriffs. R. 36. In his response brief, Harris argues only that his claims as to Moore, O'Hearn, Fitzpatrick, Knefel, Muskat, and Brylewski should be permitted to proceed, because the amended complaints in which they were named "relate back" to Harris's original complaint in this action under Rule 15(c)(1). R. 46

5

at 3-5. Harris concedes that dismissal is proper as to Dart after clarifying that he intended to sue him only in his official capacity, and also as to Cook County, and that his prayer for punitive damages should be stricken. *Id.* at 5. Harris did not argue that his operative complaint adequately alleged a constitutional violation, and did not meaningfully argue that it adequately alleged a policy or practice under *Monell*. *See id.*

**Analysis**

***Statute of Limitations.*** Defendants move to dismiss the claims against Dart, O'Hearn, Muskat, Brylewski and Cook County under Rule 12(b)(6) as barred by the statute of limitations because none were named before it closed. R. 36 at 2-7; R. 48 at 1-4. In their reply brief, Defendants also contend that Harris's claims against Moore, Fitzpatrick, Knefel and Obuli should be dismissed because although each was named in the original complaint in this case, Harris subsequently removed their names from the case caption, replacing them with "Unknown Cook County Correctional Officers" and "Unknown Cook County Correctional Nurse" before adding them back in by name only after the statute of limitations had closed.[1] R. 48 at 5-6.

"A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "But when a plaintiff's complaint nonetheless sets out all of the elements of an

---

[1] Although ordinarily arguments may not be raised for the first time on reply, here, Harris contended in his response brief that the claims against these Defendants should proceed, so the Court considers the issue in resolving Defendants' motion.

6

affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). Because there is no statute of limitations for Section 1983 claims, courts apply the state's statute of limitations for personal injury claims, *Woods v. Ill. Dep't of Children and Family Serv.*, 710 F.3d 762, 765 (7th Cir. 2007), which is two years in Illinois. 735 ILCS 5/13-202. A Section 1983 action generally accrues "when the plaintiff knew or had reason to know of the injury that is the basis of his claim." *Jamison v. Urban*, 2010 WL 11545773, at *2 (N.D. Ill. Feb. 1, 2010), *aff'd*, 411 Fed. Appx. 919 (7th Cir. 2011). Here, the operative complaint clearly and repeatedly indicates that the allegedly unlawful conduct occurred on February 29, 2016. R. 35 ¶¶ 6, 25, 32, 33, 36, 37, 43, 44. But the statute of limitations is tolled in a Section 1983 case while a prisoner completes the grievance process. *See Terry v. Spencer*, 888 F.3d 890, 894 (7th Cir. 2018) ("a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process") (quoting *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001)). Harris alleges that the grievance process was complete on March 16, 2016. Accordingly, the statute of limitations expired in March 2018. At that time, Moore, Fitzpatrick, Knefel and Obuli were named as defendants by last name, but Dart, O'Hearn, Muskat, Brylewski and Cook County were not.

Nevertheless, Rule 15(c)(1)(C) allows a plaintiff to change or add a defendant after the statute of limitations has run when the amendment "relates back" to the original pleading. An amendment "relates back" when:

7

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Citing *Hall v. Norfolk Southern Railway Company*, 469 F.3d 590 (7th Cir. 2006), Defendants argue that relation back is improper where, as here, a plaintiff fails to identify unknown defendants until after the expiration of the statute of limitations. Defendants are correct that for years, the Seventh Circuit "repeatedly reiterated" that relation back on grounds of "mistake" "does not apply where the plaintiff simply lacks knowledge of the proper defendant." 469 F.3d at 596 (citing *King v. One Unknown Fed. Corr. Officer,* 201 F.3d 910, 914 (7th Cir. 2000)). But the parties fail to recognize that the applicability of that rule remains unsettled since the Supreme Court's decision in *Krupski v. Costa Cociere S.p.A*, 560 U.S. 538 (2010). *Krupski*, which concerned a misnamed rather than unknown defendant, held that relation back under Rule 15(c)(1)(C) "depends on what the party to be added knew or

8

should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski*, 560 U.S. at 541.

This Court and others in this District have concluded that the appropriate inquiry after *Krupski* in cases in which the proper defendant's identity is unknown is what the late-added defendants knew or should have known during the 90-day period after the filing of the original complaint set forth in Rule 4(m). *See White v. City of Chi.*, 2016 WL 4270152, at *20 (N.D. Ill. Aug. 15, 2016) ("after *Krupski*, the traditional John Doe rule should not be applied to prevent relation back if a plaintiff seeks to determine the identity of the John Doe defendant before the statute of limitations expires but is unable to do so, provided that there is no other basis in the record for concluding that the newly identified defendant neither knew nor should have known that but for the plaintiff's inability to discover his identity he would have been named"); *see also Haroon v. Talbott*, 2017 WL 4280980, at *7 (N.D. Ill. Sept. 27, 2017) (approving of a "defendant-focused analysis [that] applies whether the plaintiff sues the wrong defendant because of a misunderstanding or sues a fictitious defendant because of a lack of knowledge."); *Clair v. Cook Cty., Ill.*, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 13, 2017) (after *Krupski*, "the court must limit its inquiry under Rule 15(c)(1)(C)(ii) to what the newly named defendants knew or should have known"); *Bilik v. Hardy*, 2019 WL 4735394, at *4 (N.D. Ill. Sept. 27, 2019) (same); *Williams v. City of Chi.*, 2018 WL 4404653, at *4 (N.D. Ill. Sept. 17, 2018) (same); *Brainer v. Dart*, 2018 WL 1519154, at *4 (N.D. Ill. Mar. 28, 2018) (same). Generally, to determine whether a claim is "unquestionably untimely" in such a case, "the Court

must have before it some record of what the newly added defendants knew about a plaintiff's lawsuit before they were added. Such evidence is rarely before the Court on a motion to dismiss," and so dismissal on that basis is rare. *Hawks v. Gade*, 2018 WL 2193197, at *4-5 (N.D. Ill. May 14, 2018); *see also Brainer*, 2018 WL 1519154 at *4 (inquiry into what new defendants knew or should have known "not appropriate" at pleadings stage); *Phillips v. Help at Home, LLC*, 2019 WL 266211, at *8-9 (N.D. Ill. Jan. 18, 2019) (same).

Here, each of Dart, O'Hearn, Muskat, Brylewski and Cook County were not and were never named in Harris's current lawsuit until after the statute of limitations had expired. Nor did Harris amend his complaint to include "Unknown Cook County Correctional Officers" until after the statute of limitations expired. Still, O'Hearn, Muskat and Brylewski were each initially named in Harris's First Lawsuit. And the Court is unable to determine whether and what any of these defendants knew or should have known merely from the pleadings in this one. Accordingly, dismissal on this basis at this stage is improper as to each of them.

Dismissal is likewise improper as to Moore, Fitzpatrick, Knefel and Obuli on statute of limitations grounds. Each was named by last name in both Harris's First Lawsuit, and in the original complaint in this lawsuit. Although Harris amended his complaint after the limitations period to omit their names and replace them with "Unknown Cook County Correctional Officers" and "Unknown Cook County Correctional Nurse," the Court cannot conclude from this that dismissal is proper, particularly where they were named during the applicable 90-day Rule 4(m) period,

and "there is no other basis in the record for concluding that the newly identified defendant[s] neither knew nor should have known that but for [Harris's] inability to discover [their] identit[ies they] would have been named." *White*, 2016 WL 4270152, at *20. Accordingly, Defendants' motion to dismiss is denied on this basis.

***Official Capacity Claims.*** Harris indicates in his brief that he intends to sue Dart only in his official capacity. But it remains unclear whether he is suing the other individual defendants in their individual and/or official capacities. This distinction matters; official capacity claims under Section 1983 are really claims against the municipality, and may proceed only under a theory of liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) ("[a]n official capacity suit is tantamount to a claim against the government entity itself" that can proceed only under a *Monell* theory). To proceed on such a claim, Harris must plausibly allege the existence of an unconstitutional custom or policy. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1013 (7th Cir. 2000). That policy can take three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority." *Id.* (citing *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)).

Defendants contend that Harris has failed to allege the existence of such a policy or widespread practice. In response, Harris argues that his lawsuit concerns

11

the failure "to provide adequate training or supervision of the other named employees," and that until he "is permitted to conduct discovery," he will be "unable to more specifically identify the specific training and policies violated." R. 46 at 3. But Harris goes on to concede that "[Dart] and the County of Cook should be dismissed with prejudice." *Id.* at 5. The Court agrees that Harris has not alleged a policy or practice as required (setting aside for the moment the question of whether any such policy or practice was unconstitutional). Indeed, at most, Harris alleges that on one occasion, he was forced to spend 15 minutes in a closet so as to avoid a violation of the dayroom policy. This is not enough. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (a plaintiff must plead more than "one . . . or even three" incidents to establish a "widespread custom or practice"); *see also Wojcik v. Cnty. of Cook*, 2016 WL 374140, at *5 (N.D. Ill. Feb. 1, 2016) ("One instance does not a policy or practice make."). Accordingly, any official capacity claims are dismissed.

***Constitutional Violation.*** Further, whether Harris intends to proceed on a *Monell* claim and/or against any defendant in his individual capacity, Harris still must allege a constitutional violation. Defendants argue that Harris hasn't. Harris purports to bring a Fourteenth Amendment claim, describing being locked in a closet against his will for 15 minutes, and then not receiving the medical care he believes was required as a result (i.e., a wheelchair ride to the infirmary 25 feet away, and an appointment with the staff doctor instead of medication for pain relief). *See generally* R. 35. The Due Process Clause of the Fourteenth Amendment protects inmates from deprivations of liberty interests. But prisoners have no liberty interest in remaining

in the general population. *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005). Indeed, only an "atypical and significant" deprivation would create a liberty interest protected by due process. *Lekas*, 405 F.3d at 608 (quoting *Sandin v. Conner*, 515 U.S. 472 (1995)); *see also Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991) ("[A] state can confine a prisoner as closely as it wants, in solitary confinement if it wants; a prisoner has no natural liberty to mingle with the general prison population."). As such, prisoners are subject "without remedy, to assignment to administrative segregation or protective custody at the sole discretion of prison officials . . . if for no other reason than to alleviate over-crowding concerns within the prison." *Lekas*, 405 F.3d at 609 (internal citations omitted). The Court is inclined to view Harris's allegation of confinement in a closet for 15 minutes to avoid violating the dayroom occupancy policy—though harsh—as akin to an allegation regarding administrative segregation due to overcrowding that fails as a matter of law. But because the parties do not meaningfully address whether these specific allegations, if true, amount to a constitutional violation, the Court reserves ruling on this aspect of Defendants' motion pending additional briefing described below.[2]

---

[2] Harris's allegations also bear some of the hallmarks of an Eighth Amendment deliberate indifference claim (even while his complaint references only the Fourteenth Amendment), either with respect to his having been confined briefly in the closet, or to Defendants' failure to provide certain medical care. To sufficiently plead a claim under the Eighth Amendment: (1) the alleged condition, viewed objectively, must be sufficiently serious; and (2) the defendant must act with subjective deliberate indifference toward the condition. *Board v. Farnham*, 394 F.3d 469, 479-80 (7th Cir. 1997). But as to any claim regarding his confinement, the Court notes that prison conditions may be "harsh and uncomfortable without violating the Eighth Amendment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). Indeed, "extreme deprivations are required," *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir.

***Vicarious Liability.*** Finally, Count II alleges that Cook County is vicariously liable for the actions of the officer defendants. But municipalities may not be held liable upon a theory of respondeat superior for the constitutional torts of their employees. *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("local governments are responsible only for their *own* illegal acts") (internal citations omitted). Instead, such an action may proceed only under *Monell*, a theory which, as discussed, Harris has failed to allege. *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). Accordingly, Count II is dismissed.

**Conclusion**

For the reasons stated, Defendants' motion to dismiss, R. 36, is granted as to Count II and any official capacity *Monell* claim, but the Court requires additional briefing on whether Harris has adequately alleged a constitutional violation, so Defendants' motion is taken under advisement to that extent. By January 31, 2020,

---

2002), and, viewed objectively, must be so serious as to amount to the denial of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Harris's allegations fail as a matter of law under this standard, being neither extreme nor lengthy. Further, to the extent Harris complains about his medical treatment, such a claim also fails. Mere dissatisfaction with medical care cannot support a constitutional claim of deliberate indifference. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). "Even objective recklessness—failing to act in the face of an ostensibly high risk that is so obvious that it *should* have been known—is insufficient to make out a claim." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). According to his own allegations, Harris received immediate medical attention, and his complaints largely resolved within a matter of days. Thus, even assuming their truth (and Harris's intent to allege such a claim), Harris's allegations are legally insufficient to support a claim for deliberate indifference.

14

Defendants shall submit a brief of no more than 10 pages on the subject, and Harris will then have until February 14, 2020 to file a brief of up to 10 pages in response. Both submissions should include argument and case law. Defendants shall not file a reply brief unless ordered to do so by the Court. Thereafter, the Court will review the parties' submissions, rule on the remainder of Defendants' motion, and set a deadline by which Harris may move to file a fifth amended complaint, if warranted.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: January 6, 2020